**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 25-10855 MER |
| Michael Evan Caruso | Chapter 7 |
| Debtor. | |
| Stephen Young and William Caruso and Partners, LLC d/b/a YoungCaruso | Adversary No. 25-01183 MER |
| Plaintiffs, | |
| v. | |
| Michael Evan Caruso | |
| Defendant. | |

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

THIS MATTER comes before the Court on the Motion for Default Judgment Against Michael Evan Caruso ("**Motion**") filed by Stephen Young and William Caruso and Partners, LLC d/b/a YoungCaruso (collectively, "**Plaintiffs**"), and the Supplement thereto.[1]  There were no objections or responses to the Motion.

## BACKGROUND

Debtor/Defendant Michael Caruso ("**Caruso**") commenced the underlying bankruptcy case on February 20, 2025.  Pre-petition, Caruso, his wife Kristin Caruso ("**Kristin**"), and Plaintiff Stephen Young ("**Young**") formed William Caruso and Partners, LLC ("**WCP**").  Sometime in or around April of 2022, Kristin and Caruso filed for divorce. Kristin obtained a protective order against Caruso, and he became homeless.  Young told Caruso he could use WCP's credit card for a short period to purchase a hotel room, clothing, and food.  However, Caruso continued to make personal purchases with WCP's funds well into 2024, and Young later learned that Caruso had been doing so as early as 2020.  Caruso was arrested for an unrelated matter in December 2024, and his employment with WCP was terminated.  As a result of Caruso's arrest, termination, and use of WCP's funds, Young was forced to cover WCP's expenses and payroll personally.

---

[1] ECF Nos. 9 & 18.

After Caruso filed the underlying bankruptcy case, he initiated several lawsuits against the Plaintiffs, including a complaint in the Denver County District Court and a civil rights complaint against WCP with the Colorado Department of Regulatory Agencies.  These actions forced Young to retain attorneys and expend funds to defend himself and/or WCP.  Eventually, Young filed the instant adversary proceeding on June 20, 2025, asserting claims against Caruso pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).  Caruso failed to file an answer to the Complaint, and Plaintiffs obtained a clerk's entry of default.[2]

Plaintiffs filed the instant Motion on October 2, 2025.  After reviewing the Motion, the Court entered its Order to Supplement, wherein it found that while it is appropriate to enter a default judgment as to Caruso's liability based on his failure to respond to the Complaint, the Court had several issues with Plaintiffs' explanation of damages.  In particular, the Court did not understand how Plaintiffs determined the damages owed to Young to be $150,000.00, nor did the Court understand why Plaintiffs would be entitled to treble damages.  As such, the Court ordered Plaintiffs to file a supplement to the Motion more fully detailing their calculation of damages.  Plaintiffs filed their Supplement on February 17, 2026.

**ANALYSIS**

**A.      Standard of Review**

Pursuant to Fed. R. Civ. P. 55(a) (incorporated by Fed. R. Bankr. P. 7055), "when a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Rule 55(b)(2) permits a court to enter a default judgment once a default has been entered against a party.[3]  After a default has entered, a defendant cannot defend a claim on the merits.[4]  Rather, "a defendant who fails to answer, plead, or otherwise defend an action is deemed to have admitted the factual allegations in the complaint as true.  The Court also accepts as true the undisputed facts alleged in affidavits and exhibits."[5]  Even after a default is entered, the court must still consider whether the unchallenged facts constitute a legitimate basis for entry of a judgment.[6]  "A party is not entitled to a default judgment as a matter of right; rather, the entry of a default judgment is entrusted to the sound judicial discretion of the court."[7]

---

[2] ECF No. 8.

[3] Any use of the term "Rule" hereafter means the Federal Rules of Civil Procedure unless stated otherwise.

[4] *Purzel Video GmbH v. Biby*, 13 F.Supp.3d 1127, 1135 (D. Colo. 2014).

[5] *Malluck v. Berkeley Highlands Productions, LLC*, 611 F.Supp.3d 1134, 1137 (D. Colo. 2020).

[6] *Biby*, 13 F.Supp.3d at 1135 (citing *McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008)).

[7] *Id.* (quoting *Cablevision of Southern Connecticut, Ltd. P'ship v. Smith*, 141 F.Supp.2d 277, 281 (D.

**B.      Plaintiffs' Claims are Nondischargeable**

Plaintiffs assert three claims for relief pursuant to § 523(a)(2)(A), (a)(4), and (a)(6).[8]  It appears the primary basis for each of Plaintiffs' claims is a state law claim for theft pursuant to C.R.S § 18-4-401.  However, Plaintiffs have not yet obtained a judgment for theft.  "When a plaintiff holds a claim against a debtor, but has not yet acquired a judgment, the process of finding the claim excepted from discharge by the bankruptcy court is a two-step dance."[9]  First, the Court must determine whether the plaintiff has a valid claim against the defendant, a question governed by state law.[10] The second step is determining whether such a claim is nondischargeable pursuant to § 523(a).[11]

The Court must determine whether Plaintiffs have a valid claim against Caruso for civil theft.[12]  Colorado's theft statute provides as follows:

(1) A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value;

(b) Knowingly uses, conceals, or abandons the thing of value in such a manner as to deprive the other person permanently of its use or benefit;

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;

(d) Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to another person;

(e) Knowingly retains the thing of value more than seventy-two hours after the agreed upon time of return in any lease or hire agreement; or

---

Conn. 2001) (internal quotations omitted)).

[8] Any use of the term "Section" or "§" hereafter means Title 11 of the United States Code.

[9] *In re Mullins*, 2021 WL 2679137, at *3 (10th Cir. BAP 2021) (citing *Grogan v. Garner*, 498 U.S. 279, 283, 11 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

[10] *Id.*

[11] *Id.*

[12] *See State v. 5 Star Feedlot, Inc.*, 487 P.3d 1183, 1187 (Colo. App. 2019) ("But to prevail on a civil claim under [C.R.S. § 18-4-405], the owner must prove all of the elements of criminal theft, even though the burden of proof is only preponderance of the evidence.") (citing *Intin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000); *Scott v. Scott*, 428 P.3d 626 (Colo. App. 2018); and *Black v. Black*, 422 P.3d (Colo. App. 2018)).

(f) Intentionally misrepresents or withholds a material fact for determining eligibility for a public benefit and does so for the purpose of obtaining or retaining public benefits for which the person is not eligible.[13]

A party who prevails on a claim for theft is entitled to treble damages.[14]  Plaintiffs do not specify which subsection of C.R.S. § 18-4-401 their claim is based on.  However the allegations in the Motion and Complaint, appear to fall under subsection (a).  To prevail on a claim under C.R.S. § 18-4-401(a), a plaintiff must prove the defendant committed acts constituting at least one of the statutory crimes, as well as two mental states, including: (1) that the defendant knowingly obtained control over the owner's property without authorization; and (2) that he did so with the specific intent to permanently deprive the owner of the benefit of that property.[15]

The following facts are deemed admitted.  Plaintiffs initially authorized Caruso to use WCP's funds to purchase clothing, food, and a hotel room for a limited period of time.[16]  However, Caruso continued to use WCP's funds for personal purchases after he no longer had authorization to do so.[17]  Plaintiffs also discovered that Caruso had been using WCP's funds without authorization as early as 2020.[18]  Caruso intended to deceive Plaintiffs by representing that these expenditures were for legitimate business expenses, and Plaintiffs relied on these representations when allowing Caruso to use WCP's funds.[19]  However, these representations were false, and Caruso used WCP's funds with the intent to deprive Plaintiffs of their use and benefit.[20]  Based on these facts, Plaintiffs have shown Caruso committed civil theft both by making false representations to Plaintiffs that he was using WCP's funds for legitimate company expenses while he was using the funds for unauthorized personal purchases, and by continuing to use WCP's funds after he was no longer authorized to do so.  Because Plaintiffs have a valid claim for theft, the Court will now discuss whether such claim is nondischargeable pursuant to § 523(a)(2)(A), (a)(4), and (a)(6).

---

[13] C.R.S § 18-4-401.

[14] C.R.S § 18-4-405.

[15] *In re Palecki*, 667 B.R. 581, 623 (Bankr. D. Colo. 2025) (citing *Intin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000)).

[16] ECF No. 1, ¶25, ECF No. 9, Ex. B, Affidavit of Stephen Young, ¶26

[17] ECF No. 1, ¶43 & 44; ECF No. 18, ¶¶ 25 & 26.

[18] ECF No. 1, ¶84; ECF No. 9, Ex. B, ¶¶93-96.

[19] ECF No. 1, ¶¶103-107 & 112; ECF No. 18, ¶¶114-116.

[20] ECF No. 1, ¶ 129.

    *1.       Section 523(a)(2)(A)*

Plaintiffs' first claim is brought pursuant to § 523(a)(2)(A).  Under § 523(a)(2)(A), debts obtained by "false pretenses, a false representation, or actual fraud" are nondischargeable.  To establish a non-dischargeable claim under § 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation; (2) with intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor.[21]  These elements must be proven by a preponderance of the evidence.[22]  "Because direct proof of intent is rarely available, scienter may be established through circumstantial evidence."[23]  Intent may be inferred where a debtor knowingly or recklessly makes false representations that he knows, or should know, will induce another to act.[24]  "Where theft is premised on deception under Section 18-4-401, C.R.S., the requisite mental state, an intent to defraud, must be established by proof that intentional misrepresentations were made to the victim which caused him to part with something of value in reliance on those misrepresentations.  Similar standards apply to the pleading and proof of actual fraud under Section 523(a)(2) . . . ."[25]

The facts alleged by Plaintiffs show their civil theft claim is nondischargeable pursuant to § 523(a)(2)(A).  Caruso made false representations to Plaintiffs when he represented that the charges on WCP's credit cards were for legitimate business expenses.  Caruso made these representations with the intent to deceive Plaintiffs into believing WCP's funds were being used for legitimate, authorized purposes.  Plaintiffs reasonably relied on Caruso's representations.  As a result of Caruso's representations, Plaintiffs suffered damages, including over $200,000 in unauthorized charges to WCP's credit cards, among other things.  Based on these assertions, Plaintiffs' civil theft claim is nondischargeable pursuant to § 523(a)(2)(A).

    *2.       Section 523(a)(4)*

Plaintiffs' second claim for relief is under § 523(a)(4).  In relevant part, § 523(a)(4) makes nondischargeable a debt for larceny or embezzlement.  "Larceny is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive

---

[21] *In re Bolling*, 600 B.R. 838, 848 (Bankr. D. Colo. 2019); *Fowler v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

[22] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[23] *Santiago v. Hernandez (In re Hernandez)*, 452 B.R. 709, 720-21 (Bankr. N.D. Ill. 2011) (quoting *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996)).

[24] *Id.* at 721.

[25] *In re Tauge*, 137 B.R. 495, 500 (Bankr. D. Colo. 1991) (citing *People v. Norman*, 703 P.2d 1261 (Colo. 1985); *People v. Warner*, 801 P.2d 1187 (Colo. 1990); *In re Mullet*, 817 F.2d 677 (10th Cir. 1987); *In re Black* 787 F.2d 503 (10th Cir. 1986)).

the owner of such property."[26]  For purposes of § 523(a)(4), larceny requires that the initial appropriation be wrongful.[27]  Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[28]  "The main difference between larceny and embezzlement is that with embezzlement, the debtor initially acquires the property lawfully, whereas larceny requires that the funds originally come into the debtor's hands unlawfully."[29]

The facts show Caruso embezzled WCP's funds.  Shortly after Kristin filed for divorce and Caruso became homeless in April of 2022, Plaintiffs allowed Caruso to temporarily use WCP's credit cards to purchase a hotel room, clothing, and food.  However, Caruso continued to use WCP's funds for his personal expenses after he was no longer authorized to do so.  Further, while Caruso was temporarily authorized to use WCP's funds for personal expenses in April of 2022, he had been using its funds for unauthorized purchases as early as 2020.  Caruso used WCP's funds with the intent to permanently deprive Plaintiffs of their use and benefit.  Based on these facts, Plaintiffs' civil theft claim is nondischargeable under § 523(a)(4).

### 3.    Section 523(a)(6)

Plaintiffs' third and final claim is brought pursuant to § 523(a)(6).  To prevail on a § 523(a)(6) claim, a party must prove: (1) an intentional act by the defendant; (2) done with the intent to harm; (3) which causes damages to the plaintiff; and (4) the injury is the proximate result of the action by the defendant.[30]  The first element requires proof of a willful act.  Willfulness "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[31]  Courts have recognized two ways of establishing willful conduct.  The Debtor must either "desire to cause the consequences of his act or believe the consequences are substantially certain to result from it."[32]  The latter "substantial certainty" test is not an objective test.[33]  Instead, willfulness under both standards is a wholly subjective test dependent on the debtor's state of mind.[34]

---

[26] *In re Dorado*, 400 B.R. 304, 309-10 (Bankr. D.N.M. 2008) (internal quotations omitted).

[27] *Id.* at 310.

[28] *Id.* at 310.

[29] *Id.* (internal quotations omitted.)

[30] *Trans-West v. Mullins (In re Mullins)*, 2021 WL 2679137, at *6 (10th Cir. BAP June 30, 2021) (citing *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002)).

[31] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[32] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (internal quotations omitted).

[33] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 913 (10th Cir. BAP 2020); *Via Christi Reg. Med. Center v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. Sept. 8, 2000).

[34] *In re Smith*, 618 B.R. at 913.

The second element requires proof of a malicious injury, distinct from willfulness. Malicious injury requires evidence of the debtor's motives.  To be malicious, the debtor must have "acted with a culpable state of mind vis-à-vis the actual injury caused to the creditor.[35]  The debtor's action must be "wrongful and without just cause or excuse."[36] An act may be malicious if taken "in conscious disregard of one's duties and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."[37]  "[A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind."  Both the first and second elements require proof of the debtor's intent.  Other divisions of this Court have held that a claim for civil theft may be nondischargeable under § 523(a)(6) because the intent elements required to prove a civil theft claim in Colorado are the same as the "willful" and "malicious" elements necessary for a § 523(a)(6) claim.[38] Indeed, the debtor's "knowing conduct" necessarily found as part of a state court judgment for theft is "precisely the conduct required to prove the willfulness prong of § 523(a)(6)."[39]  Similarly, the malice prong of § 523(a)(6) is satisfied by a court's finding of liability for civil theft under C.R.S § 18-4-405 because malice may be presumed by the conduct necessary to find the debtor liable under that statute.[40]

The facts that support Plaintiffs' civil theft claim also support their claim for willful and malicious injury.  Caruso's actions were "willful" because he intended to deprive Plaintiffs of WCP's funds when he used them for personal purchases, even though he knew he was not authorized to do so.  Caruso's embezzlement of WCP's funds makes him liable under Colorado's civil theft statute, which satisfies the malice prong of § 523(a)(6).  As a result of Caruso's unauthorized use of WCP's funds, Plaintiffs suffered damages.  Given these facts, Plaintiffs' § 523(a)(6) claim is also nondischargeable under § 523(a)(6).

---

[35] *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (citing *In re Smith*, 618 B.R. at 913)).

[36] *In re Smith*, 618 B.R. at 919; see *In re Tsamasfyros*, 940 F.3d 605, 607 (10th Cir. BAP. 1991).

[37] *Id.* (citing *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993)).

[38] *C-Ball Ventures, LLC v. Oltmann (In re Oltmann)*, 505 B.R. 311, 317 (Bankr. D. Colo. 2014); see *In re Rinker*, 676 B.R. 426, 443 (Bankr. D. Colo. 2025) (quoting *In re Oltmann*, 505 B.R. at 317) ("Generally, Colorado state court theft judgments may be afforded collateral estoppel effect in subsequent Section 523(a)(6) cases.").

[39] *In re Oltmann*, 505 B.R. at 317.

[40] *Id.* at 317-18 (holding that county court's finding that defendant's conduct satisfied the elements of theft and awarding of punitive treble damages under Colorado's civil theft statute gave rise to the presumption of malice.)

## C.      Damages

Plaintiffs' damages are divided into two categories: (1) damages suffered by WCP; and (2) damages suffered by Young personally.  The Court will address each category below.

### 1.      WCP Damages

Plaintiffs assert WCP is damaged in the total principal amount of $1,160,769.20, which includes $290,192.30 in misappropriated funds and credit card charges, and $870,576.90 in treble damages.[41]  Plaintiffs also assert WCP is owed interest pursuant to C.R.S § 5-12-101 and 102 and attorney fees in an amount to be determined.

The bank statements and ledger attached to the Supplement show that Caruso made $290,192.30 in purchases using WCP's funds.[42]  Because the Court found Caruso committed civil theft of these funds, WCP is entitled to treble damages.[43]  However, Plaintiffs seem to assert that WCP is entitled to both the original $290,192.30 and the trebled amount of those damages.  C.R.S § 18-4-405 is clear that a victim of civil theft may recover either two hundred dollars or three times the amount of actual damages sustained, whichever is greater.  Here, the actual amount of damages WCP sustained is $290,192.30.  The trebled damages amount to $870,576.90.  Therefore, the total principal amount of WCP's damages is $870,576.90.

WCP also asserts it is owed attorney fees in an amount to be determined.  WCP is entitled to attorney fees pursuant to C.R.S § 18-4-405.  However, Plaintiffs did not provide the amount of attorney fees they seek, nor did they provide documentation evidencing any amount.  As such, the Court will only consider the amount of attorney fees to be awarded upon proper application to the Court.  Any attorney fees awarded to WCP are nondischargeable.[44]

---

[41] ECF No. 18, ¶194.

[42] ECF No. 18, Ex. 1 at 5-10; ECF No. 18, Exs. 2-12.

[43] C.R.S § 18-4-405; *In re Mullins*, 2021 WL 2679137, at *8 ("Despite the usage of the word 'may,' courts have held that an award of treble damages and attorney's fees to a prevailing plaintiff is mandatory upon proof of all of the elements of civil theft. Thus, the Bankruptcy Court had no discretion whether to award treble damages and fees upon its finding that Debtors were liable for civil theft.").

[44] *In re McGill*, 623 B.R. 876, 901 (Bankr. D. Colo. 2020) ("Pursuant to *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), once awarded, the attorney fees and costs may be included in a nondischargeable judgment."); see *Roshan Hospitality, LLC v. Patel (In re Patel)*, 536 B.R. 1 (Bankr. D.N.M. 2015) ("[I]f a party has an independent right to recover attorney's fees or costs under applicable law in connection with a particular nondischargeable debt, the party is entitled to an award of such attorney's fees or costs as part of the non-dischargeable judgment under § 523(a).").

8

### 2.      *Young's Damages*

Plaintiffs assert Young is owed damages in the principal amount of $565,719.26, which includes $141,429.80 in attorney fees and treble damages in the amount of $424,289.46.[45]  Plaintiffs also contend Young is owed damages for the devaluation of his interest in WCP in an amount to be determined, as well as interest in an amount to be determined.[46]

The basis for Young's damages is somewhat unclear.  Indeed, the Supplement explaining Plaintiff's damages only states that Young's damages are outlined in his proof of claim and are further discussed in the Complaint.[47]  Based on the summary attached to Young's proof of claim, it appears Young is alleging most of his damages stem from the attorneys' fees he incurred as a result of Caruso's post-petition litigation.[48]  None of this post-petition litigation, aside from the instant adversary proceeding, pertains to Caruso's theft of WCP's funds.[49]  As such, Young is not entitled to these attorney fees pursuant to C.R.S § 18-4-405.  Further, Young has neither made any allegations nor provided evidence that he is otherwise entitled to these attorney fees pursuant to an agreement or statute.  Therefore, the only attorney fees Young may be entitled to are those incurred in connection with the civil theft claim.  Otherwise, he is not entitled to any of the attorney fees incurred in defending Caruso's post-petition litigation.

Young also asserts he is owed damages for the devaluation of his interest in WCP.[50]  In support of this contention, Young asserts that because Caruso still owns 25% of WCP, no one is willing to purchase his 75% interest because of Caruso's extended litigation.  Young also asserts Caruso's actions have made it difficult for him to operate WCP for several reasons, including that Caruso has interfered with WCP's customers.  Young did not provide any evidence to support these allegations or explain how they are related to the theft of WCP's funds.  Nor did Young provide a valuation of WCP or evidence reflecting how Caruso's actions have affected that valuation.  As such, the Court cannot award Young damages for the devaluation of his interest in WCP.

Given the above, it appears the only damages Young might be entitled to are attorneys' fees incurred in connection with Plaintiffs' civil theft claim.  The Court will consider the amount of attorney fees to be awarded upon a proper application to the Court.

---

[45] ECF No. 18, ¶195.

[46] *Id.*

[47] *Id.* ¶156-57.

[48] *Id.* Ex. 13 at 4.

[49] *Id.* ¶¶ 67-75, 77, 81-83.

[50] *Id.*, ¶195.

**CONCLUSION**

For the reasons stated above, THE COURT ORDERS the Motion is GRANTED. Plaintiffs' claim in the principal amount of $870,576.90, is excepted from Caruso's discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  .

THE COURT FURTHER ORDERS on or before **June 9, 2026**, Plaintiffs shall file a supplement showing the amount of attorneys' fees they incurred related to Caruso's theft of WCP's funds, including all invoices, time sheets, and other documentation.  The Court will not enter a final judgment until it has ruled on the attorneys' fees component.


Dated May 19, 2026                          BY THE COURT:


                                            Michael E. Romero, Judge
                                            United States Bankruptcy Court